IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DILLON R. TREJO,<br><br>                Plaintiff,<br><br>vs.<br><br>THE CITY OF OMAHA, NEBRASKA, and<br>BROOKS RILEY, in his individual and<br>official capacity;<br><br>                Defendants. | 8:19CV182<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment Based Upon Qualified Immunity, ECF No. 18, filed by Defendant City of Omaha and Defendant Brooks Riley, in his official and individual capacities. Plaintiff has not filed a response to Defendants' Motion. For the reasons stated below, the motion will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

1

On April 17, 2017, Plaintiff Dillon Trejo used a handgun to rob the Bucky's gas station located at 2223 S. 24th Street in Omaha, Nebraska. Uniformed Omaha Police Officer Brooks Riley heard about the robbery during pre-shift roll call. Riley Aff., ECF No. 21-1, Page ID 102. After hearing a broadcast over the police radio that indicated Trejo was in the area of the 2600 block of Rees Street, Officer Riley and his partner Officer Jason Wilhelm headed to the area. *Id.* at 103. While *en route* Officer Riley learned that Trejo was armed, had stolen the white 2012 Ford F-150 he was driving, and had fled at a high rate of speed when officers attempted to conduct a traffic stop. Riley Aff., ECF No. 21-1, Page ID 102-03. While the vehicle being operated by Trejo was being tracked by the Omaha Police Department helicopter, Able 1, Officer Riley heard the radio broadcast informing officers "everyone be advised, he said he's going to shoot it out with us." Dispatch Audio, ECF No. 21-4, 30:54-30:58; Riley Aff., ECF No. 21-1, Page ID 103.

After a request was made over the radio for vehicles that had stop sticks, Officers Riley and Wilhelm attempted to use stop sticks to disable the vehicle driven by Trejo at 29th and Harney Streets. However, Trejo arrived at the intersection before the officers, ran a red light, and continued southbound down 29th Street. Officers Riley and Wilhelm then proceeded to the area of 27th and Rees Streets following a broadcast that Trejo was in the area. Upon arriving at 27th and Rees Street, Officer Riley exited the cruiser, and ran down Rees Street. Officer Riley took cover behind a gold minivan and deployed a stop stick into Rees Street in front of the truck driven by Trejo. Riley Body Cam, ECF No. 21-2, 00:00-00:19.

Trejo stopped the stolen Ford F-150 short of the stop stick, exited the vehicle, and began to flee Officer Riley on foot. Officer Riley pursued Trejo, commanding him to stop.

2

After a brief foot pursuit, Trejo abruptly stopped, turned toward Officer Riley, lifted his shirt, and reached for his waistband as if to retrieve a concealed firearm. Trejo then raised one arm and extended it towards Officer Riley, as if pointing a gun in Officer Riley's direction. Officer Riley, acting under the belief that Trejo was about to shoot him, discharged his service weapon, striking Trejo. Approximately 23 seconds after Officer Riley discharged his service weapon, officers called for a rescue squad over the radio. Responding law enforcement officers then immediately began treating Trejo, rendering first aid until the EMS rescue squad arrived.

Trejo's Complaint contains a state-law claim for negligence as well a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights. On July 9, 2019, in response to Defendants' Partial Motion to Dismiss, the Court dismissed Trejo's negligence claim except as it related to the officers' alleged failure to call for medical assistance in a timely manner. Mem. & Order, ECF No. 6, Page ID 36. Defendants' Motion for Summary Judgment, ECF No. 18, seeks dismissal of Trejo's § 1983 claim and the remaining negligence claim.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for

summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826

F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I.     42 U.S.C. § 1983 Claim

Section 1983 creates a private right of action to remedy violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The cause of action is available against "[e]very person who acts under color of state law to deprive another of a constitutional right." *Id.* (citation and internal quotation marks omitted).

"Qualified immunity shields a law enforcement officer from liability in a § 1983 action unless the officer's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000)

5

(citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted).

"A government official is entitled to qualified immunity unless (1) the official violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation." *Wallace v. City of Alexander*, 843 F.3d 763, 768 (8th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may use their discretion in deciding which of the two foregoing inquiries to analyze first. *Pearson*, 555 U.S. at 236. "The party asserting immunity always has the burden to establish the relevant predicate facts, and, at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (citations omitted).

Trejo claims Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. The right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. *Graham v. Conner*, 490 U.S. 386, 395 (1989). To establish a Fourth Amendment excessive force violation, "plaintiffs must show that the amount of force [ ] used was not reasonable under the circumstances." *Dooley*, 856 F.3d at 1181 (citing *Graham*, 490 U.S. at 396).

The reasonableness standard applicable "in deadly force cases is well settled[.]" *Malone v. Hinman*, 847 F.3d 949, 952 (8th Cir. 2017). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Id.* at 953 (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). Courts must disregard the officer's

6

"subjective intent or motivation," and "consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." *Id*. "To determine whether a person is an immediate threat, an officer may consider both the person's present and prior conduct." *Wallace*, 843 F.3d at 768 (citation omitted).

The reasonableness of an officer's use of deadly force is ultimately judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Malone*, 847 F.3d at 953 (quoting *Loch*, 689 F.3d at 965). Before an officer resorts to the use of deadly force, some warning should be given if feasible. *Id*. However, when an officer draws his firearm, points it at an individual, and orders the individual to get on the ground, the officer's conduct "should have put [the suspect] on notice that his 'escalation of the situation would result in the use of the firearm.'" *Loch,* 689 F.3d at 967 (quoting *Estate of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012)). The lack of a more specific warning does not necessarily render an officer's use of force unreasonable. *See id*. (citing *Estate of Morgan*, 686 F.3d at 498; *Krueger v. Fuhr*, 991 F.2d 435, 440 (8th Cir. 1993)).

"Even if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.*'" Loch,* 689 F.3d at 966 (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002)). In *Wenzel v. City of Bourbon*, the Eighth Circuit reversed the district court's denial of qualified immunity for an officer who shot a suspect whose empty hands were assumed to be clearly visible and who was later discovered to be unarmed. 899 F.3d 598, 602-03 (8th Cir. 2018). In *Wenzel*, the officer

7

was approached rapidly by an angry suspect who ignored the officer's commands to stop; who had attempted to flee and endangered motorists; and who had a history of being aggressive and violent towards officers, thus making it reasonable for the officer to believe the suspect posed in immediate threat of serious injury to the officer. *Id.*

Here, Trejo used a handgun to rob a gas station. Officer Riley learned that Trejo was armed, had stolen the vehicle he was driving, and had fled at a high rate of speed when other officers attempted to conduct a traffic stop. Riley Aff., ECF No. 21-1, Page ID 102. Officer Riley also heard a radio broadcast stating "everyone be advised, he said he's going to shoot it out with us." Dispatch Audio, ECF No. 21-4, 30:54-30:58; Riley Aff., ECF No. 21-1, Page ID 103.

When Officer Riley attempted to stop Trejo's vehicle using the stop sticks, Trejo exited the truck, and fled. Riley Body Cam, ECF No. 21-2, 00:19-22. Officer Riley pursued with his service firearm drawn, commanding Trejo to stop. Riley Aff., ECF No 21-1, Page ID 104. Trejo briefly looked back at Officer Riley but did not stop. Riley Body Cam, ECF No. 21-2, 00:23. Trejo raised his hands in the air but then quickly brought them down to his waist and began to turn to his left. *Id.* at 00:24. Trejo continued to turn and, as he turned, he brought his right hand up his side from his waist. *Id.* at 00:24-00:25. Trejo continued to raise his right arm and ultimately extended it toward Riley as if to simulate pointing a firearm. *Id.* Because Officer Riley believed Trejo was armed and was about to shoot him, Officer Riley shot Trejo with his service firearm. Riley Aff., ECF No 21-1, Page ID 104.

The Court must judge Officer Riley's actions from the perspective of a reasonable officer in his position. Considering the totality of the circumstances, a reasonable officer

in Officer Riley's position would conclude Trejo posed an immediate threat to his safety. Accordingly, the use of deadly force was objectively reasonable.

II. **Negligence Claim**

"A negligence action brought under the PSTCA has the same elements as a negligence action brought against a private individual—a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *Reiber v. Cty. of Gage*, 928 N.W.2d 916, 925 (Neb. 2019) (citing *Ginapp v. City of Bellevue*, 809 N.W.2d 487 (Neb. 2012)). "While the existence of a duty and the identification of the applicable standard of care are questions of law, the ultimate determination of whether a party deviated from the standard of care and was therefore negligent is a question of fact." *Id.* (citing *Cingle v. State*, 766 N.W.2d 381 (Neb. 2009)). "To resolve the issue, a finder of fact must determine what conduct the standard of care would require under the particular circumstances presented by the evidence and whether the conduct of the alleged tort-feasor conformed with the standard." *Id.* (citing *Cingle*, 766 at 381). In other words, the "existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Phillips v. Liberty Mut. Ins. Co.,* 876 N.W.2d 361, 368 (Neb. 2016).

Trejo alleges Officer Riley was negligent in failing to call for medical assistance in a timely manner, and that his negligence is imputed to the City pursuant to the doctrine of respondeat superior.

Although Riley himself did not call for medical assistance for Trejo, other officers at the scene asked dispatch to "start a squad" 23 seconds after Trejo was shot. *Riley*

*Body Cam*, ECF No. 21-2,[2] 00:26-00:49. Five second later, after officers realized Trejo had been shot in the neck, an officer told dispatch "start a squad he's injured." *Id.* at 00:49-00:54. Officer Riley was aware that medical assistance had been summoned. *See id.* Within 32 seconds after the shooting, when Trejo had been handcuffed and searched for weapons, officers began to administer first aid. *Id.* at 00:26-00:58. Officers continued to administer first aid until an ambulance arrived five minutes and forty-two seconds after Trejo was shot.[3] *See Arrick Body Cam*, ECF No. 21-6, 00:40-6:00. Although whether Officer Riley acted reasonably generally would be a question of fact to be decided by the trier of fact, even viewing the facts in the light most favorable to Trejo, no reasonable fact finder could conclude that Riley breached his duty to exercise reasonable care with respect to Trejo. Thus, Trejo's negligence claim against Officer Riley will be dismissed.

If an employee is not liable, the employer cannot be liable under the doctrine of respondeat superior. *Kocsis v. Harrison*, 543 N.W.2d 164, 169 (Neb. 1996) (citation omitted). Thus, Trejo's negligence claim against the City will also be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 18, filed by Defendants is granted;

---

[2] The discs submitted by Defendants incorrectly label Exhibit 2 as the Cruiser Video for Car #243 and Exhibit 3 as Officer Riley's body camera video. The Court will reference the exhibit numbering in Defendants' index of evidence.

[3] Twenty-two seconds passed between the time Trejo was shot and an officer is heard asking for closure of additional streets. Riley Body Cam, ECF No. 21-2, 00:26-1:06. Five minutes and twenty seconds elapsed between the time the officer requested closure of the additional streets and the ambulance arrived. Arrick Body Cam, ECF No. 21-6, 00:40-6:00.

2. The above-captioned action is dismissed, with prejudice;

3. The parties will bear their own costs and attorney fees; and

4. A separate judgment will be entered.

Dated this 28th day of January, 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge